UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| **RODNEY D. BRANSON,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**MICHAEL J. ASTRUE,** )<br>**Commissioner of Social Security,** )<br>)<br>Defendant. ) | Case No. 2:09CV3MLM |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Rodney D. Branson for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Plaintiff filed a brief in support of the Complaint. Doc. 18. Defendant filed a brief in support of the Answer. Doc. 21. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 13.

## I.
## PROCEDURAL HISTORY

On May 17, 2006, Plaintiff filed applications for benefits, alleging a disability onset date of June 30, 2004. Tr. 365, 371. Plaintiff's applications were denied and he requested a hearing before an administrative law judge ("ALJ"). Tr. 1-2, 31. A hearing was held before an ALJ on November 16, 2007. Tr. 311. The ALJ issued a decision finding that Plaintiff is not disabled through the date of the decision. Tr. 4-19. The Appeals Council denied Plaintiff's request for review on November 21, 2008. Tr. 20-23. As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004);

2

Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

    (1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record,

observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

# III.
# DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleges that he is disabled due to back injury, hepatitis C, both knees, left ankle, and hypocomplementemic urticarial vasculitis ("HUV"). Plaintiff contends that the decision of the ALJ is not supported by substantial evidence because the ALJ erred in regard to the determination of Plaintiff's residual functional capacity ("RFC"). Plaintiff further contends that the ALJ's decision is not supported by substantial evidence because the ALJ should have obtained the opinion of a consulting dermatologist.

The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual

functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir.2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir.2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir.2005) (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004).

At step 5 "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish her RFC."
Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737).

Upon making an RFC assessment an ALJ must first identify a claimant's functional limitations or restrictions and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The ALJ in the matter under consideration identified Plaintiff's functional limitations after considering the medical records, Plaintiff's testimony, and Plaintiff's credibility. Only after doing so did the ALJ find, in regard to Plaintiff's RFC, that Plaintiff can perform light work with specified restrictions. In particular, the ALJ found that Plaintiff can lift and carry no more than twenty pounds occasionally; he can lift and carry ten pounds frequently; he can stand and walk up to six hours in an eight-hour workday, no more than one hour at a time; he should never climb ladders, ropes, or scaffolding; he should not, more than occasionally, stoop, kneel, crouch, or crawl; he cannot use his left foot for operating foot controls; he has no limitation in his right foot; he should avoid concentrated exposure to extreme cold temperatures and vibration of the body; and he should avoid walking on wet or uneven surfaces.

9

First, to the extent that the ALJ failed to cite specific medical evidence, it does not indicate that such evidence was not considered. See Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). See also Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citations omitted); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").

As stated above, the ALJ considered Plaintiff's medical records upon determining his RFC. The court notes that the record reflects that in 1990 Plaintiff had surgery on his left foot after falling off a roof (Tr. 138-39); that he had right knee arthroscopy for a meniscus tear and repair in January 1991; that in March 1991 Plaintiff had a left subtalar fusion (Tr. 143-44); that in July 1992 Plaintiff had an anterior discetomony (Tr. 148-49); that in June and November 1993 Plaintiff was seen for complaints of back pain (Tr. 276, 281); that on June 1, 1995, Plaintiff presented to the emergency room with complaints of hives and was diagnosed with HUV (Tr. 289); that on July 19, 1995, Plaintiff presented to the emergency room with an allergic reaction (Tr. 291); that it was noted on July 19, 1995, that Plaintiff had been treated at the Family Health Center for four months for hives and had been prescribed new medication the prior day; that subsequently Plaintiff was seen at the dermatology clinic where he was diagnosed with urticaria with angioedema and where it was noted that Hepatitis C should be considered[1] (Tr. 284); that on July 26, 1995, Plaintiff was seen for pustular lesions on his wrist and diagnosed with Hepatitis C (Tr. 285); that on August 16, 1995, Plaintiff had erythematous raised wheals on his forearms, ankles, upper thighs, and hairline and the diagnosis was

---

[1] Records of the dermatology clinic are undated.

urticaria, difficult to control (Tr. 288); that on August 1, 1996, Plaintiff was seen for reported symptoms of generalized fatigue and chronic urticaria and was diagnosed with Hepatitis C and weight loss (Tr. 295); that on August 29, 1996, Plaintiff presented in the emergency room with complaints of hives for one week and was diagnosed with asymptomatic Hepatitis C and recurrent urticaria (Tr. 293-94); that on June 4, 2002, Plaintiff presented to the Family Health Center with complaints of Hepatitis C, chronic back pain, hives, and chronic pain secondary to multiple fractures and was diagnosed with Hepatitis C, by history, with chronic hives secondary to Hepatitis C and chronic pain secondary to multiple fractures (Tr. 166-67); and that Plaintiff did not again present to the Family Health Center until May 17, 2006.

Records of the Family Health Center dated May 17, 2006, reflect that Plaintiff presented on that date to reestablish care; that Plaintiff said medication helped his urticaria vasculitits, that he had not worked since 2004, and that he was allergic to fiberglass, grass, detergent, fabric softener, and various foods; that Plaintiff moved about without difficulty; that Plaintiff was diagnosed with Hepatitis C, gatroesophageal reflux disease ("GERD"), hypertension, and polysubstance abuse, in remission, except for tobacco; and that Plaintiff was prescribed medication for his hives. Tr. 155. Records further reflect that Plaintiff was seen at the Family Health Center on August 3, 2006, by Andrew Quint, M.D., who reported that Plaintiff's physical examination was normal and that Plaintiff said his urticaria was controlled with medication. Tr. 171-72. Records of the Family Health Center further reflect that on September 15, 2006, Dr. Quint assessed Plaintiff with sinusitis and bilateral otitis media and reported that Plaintiff's physical examination was otherwise normal (Tr. 173); that Plaintiff presented on October 27, 2006, for complaints of fatigue and that he was diagnosed on this date with Hepatitis C, GERD, hypertension, tobacco abuse, fatigue, and lightheadedness of uncertain etiology (Tr. 175); and that on December 15, 2006, Dr. Quint reported that Plaintiff had multiple

11

lesions, that his hypertension was inadequately controlled, that Plaintiff abused tobacco, that Plaintiff was advised to stop smoking, that Plaintiff had no signs of cirrhosis or advanced liver disease, and that Plaintiff's urticaria was probably related to his Hepatitis C (Tr. 178).

As noted by the ALJ, Plaintiff presented to Dr. Quint on February 16, 2007, for a disability evaluation. As noted by the ALJ, Dr. Quint reported on this date that Plaintiff's blood pressure was 106/84; that his heart rate and rhythm were normal; that his lungs were clear to auscultation; that Plaintiff had digital clubbing and no cyanosis or edema; that Plaintiff had full range of motion in his neck without pain, in both knees, with some right knee crepitus, and in his right ankle, with some pain on rotation; that Plaintiff had limited range of motion in his left ankle; that his straight leg raise testing was negative; that he had tenderness around his lumbar spine and paraspinous muscles; that he was able to forward flex to ninety degrees, do a deep knee bend, and extend his back to twenty-thirty degrees; that he had normal upper and lower extremity strength, gait, and range of motion in both shoulders and elbows; that his knee exam showed no redness, warmth, or effusion; and that his handgrip and dexterity were normal.

Also, as noted by the ALJ, on February 16, 2007, Dr. Quint reported that Plaintiff had Hepatitis C with persistently normal liver enzymes, urticaria, mild fibrosis and nonspecific reports of fatigue and no clinical signs of cirrhosis; that Plaintiff's GERD and hypertension were *controlled with medication*; that Plaintiff continued to use tobacco; that Plaintiff could not do construction work or heavy labor; that there was *no reason Plaintiff could not do light duty work*; that Plaintiff could *sit through a normal workday and would not need to lie down or prop up his feet*; that Plaintiff could do some *light carrying* and *light-type duty*; and that *motivation was an issue*. Additionally, Dr. Quint reported on February 16, 2007, that Plaintiff said a nonsteroidal anti-inflammatory *drug* he took for

pain *worked "pretty well"* and that on examination Plaintiff was well-nourished and in no acute distress. Tr. 184-86.

In a Medical Source Statement - Physical, completed on February 16, 2007, Dr. Quint reported that Plaintiff could *stand or walk for two hours in an eight-hour workday*; that he could *stand or walk continuously for thirty minutes*; that he was *limited* in his ability to push and pull *left foot controls*; that he could *never climb*; that he could *occasionally balance, stoop, kneel, crouch, and bend*; that rest "would be helpful" due to fatigue related to hepatitis; that Plaintiff did *not need to recline, assume a supine position, or prop up his legs during the day*; that Plaintiff could *frequently lift ten pounds* and *occasionally lift twenty five pounds*; that he could *sit* a total of *eight hours continuously*; that he had *unlimited ability to push and pull* with his hands; and that he had *unlimited ability to reach, handle, finger, feel, see, hear, and speak*. Tr. 181-83.

Records from the Department of Corrections ("DOC") reflect that on May 17, 2007, upon undergoing a medical evaluation, Plaintiff stated that he did not have extreme tiredness, weight loss, or weakness. A report of this date states that Plaintiff did not have "obvious pain, [ ], injuries, illnesses or other symptoms suggesting [the] need for [a] medical referral." Tr. 194. The ALJ considered that records from the DOC reflect that on May 18, 2007, Plaintiff reported a large hive rash on his left hip, right arm, and both feet. Also, on May 20, 2007, Plaintiff had hives and a swollen face; on May 26, 2007, Plaintiff complained of hives; on June 1, 2007, Plaintiff had "welps" raised under the arms, bilaterally, large flat red areas and rash on the right thigh; and on June 27, 2007, Plaintiff had small red areas on both feet and a red area under his right arm. Tr. 201, 212, 217, 233. Records of the DOC reflect that July 12, 2007, Plaintiff was placed in isolation while his lesions healed. Tr. 196, 241-42. While Plaintiff was in isolation, on July 14, 2007, it was reported that his gait was steady, his grip was strong and equal, and he had no edema; on July 15, 2007, it was

13

reported that he had "good rom"; on July 16, 2007, it was reported that Plaintiff's heart beat was strong and regular in rate and rhythm; and on July 16, 2007, it was also reported that Plaintiff had no tenderness or distention in his "GI" system, his gait was "even and steady," and his hand grips were strong bilaterally. DOC records state that on July 17, 2007, Plaintiff was discharged from isolation, and that on July 24, 2007, Plaintiff's diagnosis was chronic urticaria and skin excoriation. Tr. 239, 247, 250, 252.

Plaintiff submitted additional evidence to the Appeals Council, including records from University of Missouri Healthcare reflecting that he presented as a new patient on November 13, 2007, complaining of hives for fifteen years; that Plaintiff was diagnosed with chronic urticaria; and that Plaintiff was instructed to continue taking his medication for hives. Tr. 272-74. Records of April 22, 2008, reflect that Plaintiff had chronic delayed pressure urticaria and a new spot on his right hand. Tr. 306-307. An April 25, 2008 MRI report states that Plaintiff had an MRI of the right knee and that the MRI showed a horizontal tear of the medial meniscus with a small parameniscal cyst, a small popliteal cyst, and bone bruise of the medial aspect of the patella. Tr. 301. Records further reflect that on May 22, 2008, Plaintiff had a right knee diagnostic arthroscopy and partial medial meniscetomy and decompression of medial parameniscal cyst and was instructed to bear weight as tolerated. Tr. 310.

At the hearing Morris Alex, M.D., testified that he reviewed Plaintiff's medical records and that, after doing so, he concluded that Plaintiff could do light work, except that he could not use his left leg to operate foot controls; that he could sit for an unlimited amount of time; that he needed to avoid temperature and humidity extremes; that he could stand and walk for one hour continuously for a total of six hours in an eight-hour work day, and that he could not climb ladders or scaffolds. Dr. Alex further testified that he reviewed the listings and that Plaintiff did not meet or equal a

listing. In regard to urticaria vasculitis, Dr. Alex said that he was not sure who made the diagnosis and how that diagnosis was made; that "there is no question that while [Plaintiff] was incarcerated he had a lot of problems with his urticaria"; and that Plaintiff's lesions should have been biopsied. Dr. Alex said that he disagreed with Plaintiff's treating physician in regard Plaintiff's need to lay down and testified that the treating physician was in a better position to evaluate Plaintiff's limitations. Dr. Alex also testified that he was not familiar with the term "HUV." Tr. 241-50.

To the extent that Dr. Alex commented on Plaintiff's need to lay down, the court notes that Dr. Quint merely said that it would be helpful for Plaintiff to rest during the day; he did not say that Plaintiff needs to lay down. Significantly, Dr. Quint opined that Plaintiff did not need to recline, assume a supine position, or prop up his legs during the day. Thus, despite his comment to the contrary, Dr. Alex actually did not disagree with Dr. Quint. To the extent Dr. Alex testified that he was not familiar with the term "HUV," the court notes that this term was used by doctors of record to describe Plaintiff's urticaria vasculitis/hives/lesions. The name assigned to a disease is not controlling in regard to a determination of a claimant's RFC; a claimant's symptoms and the limitations that his symptoms place on his ability to engage in substantial gainful activity are relevant. See SSR 96-8p; Goff, 421 F.3d at 790; Tucker, 363 F.3d at 783. Indeed, Dr. Alex considered the effect of the symptoms of Plaintiff's urticaria vasculitis/hives/lesions on his ability to perform work-related activities. As such, the ALJ was not required to obtain a dermatological consultation merely because Dr. Alex was unfamiliar with the term "HUV."

The court finds that the ALJ's assessment of Plaintiff's RFC is based upon and is consistent with all of the relevant evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description

15

of his limitations") (citing <u>Anderson v. Shalala</u>, 51 F.3d 777, 779 (8th Cir.1995). In particular, the ALJ's determination of Plaintiff's RFC is consistent with the findings of his treating doctor, Dr. Quint, who determined that Plaintiff can lift ten pounds frequently and twenty-five pounds occasionally, sit for a full 8-hour workday, and occasionally balance, stoop, kneel, and crouch. Dr. Quint further found that Plaintiff does not need to recline, lie down or prop up his feet during a workday and concluded that Plaintiff can engage in light work. Although Dr. Alex disagreed with some of Dr. Quint's findings, as acknowledged by Dr. Alex, Dr. Quint's findings should be given more weight as Dr. Quint is the treating physician and Dr. Alex is a consulting physician who did not examine Plaintiff. The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" <u>Prosch</u>, 201 F.3d at 1012-13 (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). "Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician." <u>Chamberlin</u>, 47 F.3d at 1494 (citing <u>Matthews</u>, 879 F.2d at 424). In any case, Dr. Alex's findings are consistent with the ALJ's determination of Plaintiff's RFC as Dr. Alex concluded, based on his review of Plaintiff's medical records, that Plaintiff can engage in light work.

Also, in regard to Plaintiff contention that the ALJ should have obtained a dermatological evaluation of Plaintiff, the court first notes that it is Plaintiff's burden to produce evidence that he is disabled. <u>See</u> 20 C.F.R. § § 404.1512, 416.912; <u>Roth v. Shalala</u>, 45 F.3d 279, 282 (8th Cir. 1995). An ALJ is not required to seek additional medical evidence unless "a crucial issue is undeveloped.'" <u>Goff</u>, 421 F.3d at 791 (quoting <u>Stormo v. Barnhart</u>, 377 F.3d 801, 806 (8th Cir. 2004)). The ALJ is not required to obtain further medical evidence unless the evidence is insufficient for the ALJ to make a determination as to whether a claimant is disabled. <u>See</u> 20 C.F.R. §§ 404.1512, 404.1519a(b),

16

404.1624(c)(3). In the matter under consideration substantial evidence establishes that the ALJ had sufficient evidence to determine whether Plaintiff is disabled. As such, the ALJ was not required to obtain a dermatological consultation. See Tellez v. Barnhart, 403 F.3d 953, 956-57 (8th Cir. 2005) (holding that the ALJ was not required to obtain additional medical opinions where "there [was] no indication that the ALJ felt unable to make the assessment he did and his conclusion [was] supported by substantial evidence").

Upon discrediting Plaintiff's allegations of the severity of his conditions, the ALJ considered that there are significant gaps in Plaintiff's treatment history. As noted by the ALJ, Plaintiff did not seek regular medical treatment during the two year period from his alleged onset date of June 30, 2004, through May 1, 2006, the date upon which he filed his applications for disability benefits. As also noted by the ALJ, the only incident of record where Plaintiff received emergency room treatment for hives was while he was in the custody of the DOC. Seeking limited medical treatment is inconsistent with claims of disabling pain. See Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). In this matter, however, the record does not reflect that Plaintiff was denied medical treatment due to an inability to pay.

The ALJ considered that when Plaintiff's hives were treated with medication while he was incarcerated, the hives responded to the medication. Indeed, other instances in the record reflect that when Plaintiff's hives were treated with medication, the medication was effective. For example, in August 2006, Plaintiff reported that his urticaria was controlled with medication and in April 2008 Plaintiff said that he was pleased with his current medication and that his urticaria was "as good now as ever." Tr. 171, 306-307. Conditions which can be controlled by treatment are not disabling. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450.

Upon discrediting Plaintiff's claim of disabling pain the ALJ also considered that Plaintiff appeared to lack motivation. This is consistent with Dr. Quint's February 2007 statement that motivation to work seemed to be Plaintiff's issue. See Kisling v. Chater, 105 F.3d 1255, 1258 (8th Cir. 1997) (holding that the ALJ properly relied on a therapists report that the claimant's motivation to work was suspect).

The ALJ also properly considered that Plaintiff did not appear to be in distress during the administrative hearing. While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration. Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); Jones v. Callahan, 122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain

are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, to reach his conclusion, the ALJ combined his review of the record as a whole with his personal observations.

Upon discrediting Plaintiff's allegation that he is disabled, ALJ further considered that Plaintiff worked for approximately twelve years with his alleged disabling conditions. Indeed, Plaintiff injured his back in 1990 and presented with hives in 1995, yet he continued to work until 2004. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148049 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff, 421 F.3d at 792 (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). Section 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity.

After determining Plaintiff's RFC, the ALJ found that he could not perform his past relevant work in auto body as he had adverse reactions to substances in the workplace. As such, consistent with the case law and Regulations, the ALJ posed a hypothetical to a vocational expert ("VE") which included all of Plaintiff's limitations which the ALJ found credible. 20 C.F.R. § 404.1560(b)-(c); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."). The VE testified that a hypothetical claimant with Plaintiff's limitations could perform jobs as a lot cashier, officer helper, and light assembly worker, all of which were available in substantial numbers in the national economy. Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a VE's testimony constitutes substantial evidence supporting the ALJ's decision. Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial

evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

In conclusion, the court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence and that it is consistent with the case law and Regulations.

## IV.
## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and in the Brief in Support of Complaint is **DENIED;** Docs. 1, 18.

**IT IS FURTHER ORDERED** that separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of January, 2010.